FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2025 OCT 29 P 4:46

| | | |
|---|---|---|
| CHRISTAL SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:26cv3614-MSN-WEF |
| | ) | |
| GENESIS LOGISTICS, INC., | ) | |
| and | ) | |
| DHL EXCEL SUPPLY CHAIN, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Christal Scott ("Plaintiff" or "Scott"), appearing *pro se* (representing herself), files this Complaint against Defendants Genesis Logistics, Inc. ("Genesis") and DHL Excel Supply chain ("DHL") (collectively, "Defendants"), alleging a continuous, severe, and egregious pattern of race, age, and disability discrimination, failure to accommodate a known physical impairment, a hostile work environment, and systemic retaliation, culminating in her constructive discharge.

Plaintiff asserts rights and seeks comprehensive legal and equitable relief under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621 et seq.), the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101 et seq.), the Family and Medical Leave Act of 1993, as amended (29 U.S.C. § 2601 et seq.) and the "CROWN ACT", Virginia Human Rights Act, Va. Code § 2.2-3901.

**I. JURISDICTION AND VENUE**

1. This Court possesses original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4), as this controversy arises directly under the statutory civil rights laws of the United States.

2. This Court possesses supplemental jurisdiction over Plaintiff's state-law claims under the Virginia Human Rights Act (VHRA), Va. Code § 2.2-3900 et seq., pursuant to 28 U.S.C. § 1367(a), because the state-law race, trait, and hair texture discrimination claims arise out of the exact same common nucleus of operative facts as Plaintiff's federal civil rights claims and was dual filed with the VHRA when the EEOC charge was filed.

3. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3). All unlawful employment practices, discriminatory acts, statutory violations, physical batteries, and retaliatory conduct alleged herein were executed by Defendants' corporate agents at their active commercial facility located at 705 Bradburn Place, Suite 103, Stafford, Virginia 22554.

4. Plaintiff has fully exhausted her administrative remedies. Plaintiff timely filed her initial and amended Charge(s) of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights under EEOC Charge No. 570-2024-04732, explicitly identifying both Genesis Logistics and DHL as joint employers.

5. Plaintiff brings this action within ninety (90) days of receiving her formal Notice of Right to Sue.

## II. PARTIES

6. Plaintiff Christal Scott is an adult Black citizen of the United States of African American racial descent, residing at 918 Walnut Drive, Fredericksburg, Virginia [1]. Plaintiff was born on September 25, 1972, and was fifty-two (52) years of age during the primary periods of discrimination and retaliation alleged herein. At all times relevant, Plaintiff was an

"employee" protected under all applicable federal and state anti-discrimination and leave statutes.

7. Defendant Genesis Logistics, Inc. is a foreign general business corporation incorporated under the laws of the State of Ohio, operating as a nationwide third-party contract logistics provider. Defendant maintains a commercial operational presence and logistics facility in Stafford, Virginia, where it regularly employs more than 500 individuals. At all times relevant, Defendant was an employer within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b), 42 U.S.C. § 12111(5), and 29 U.S.C. § 2611(4).

8. Defendant DHL is a foreign general business corporation doing business in the Commonwealth of Virginia, with a corporate office presence located at 360 Westar Blvd, Westerville, Ohio 43082. At all times relevant, Defendant DHL operated as a joint employer with Defendant Genesis Logistics, Inc., collectively exercising shared operational control, establishing employment practices, and supervising human resources infrastructure at the Stafford, Virginia operational facility. Both corporate entities are jointly and severally liable for the unlawful acts alleged herein.

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment Background and Superior Performance Status

9. On or about March 11, 2024, Defendants hired Plaintiff as a Senior Human Resources Representative at the Stafford, Virginia facility.

10. Plaintiff is a highly accomplished corporate professional specializing in recruitment, employee relations, analytical process auditing, and complex workplace investigations.

11. Following the sudden termination of prior site managers Saul Johnson and Steve, Plaintiff independently assumed and successfully performed the entire operational workload of the site's HR Manager position.

12. On March 17, 2025, Human Resources Manager Crystal Williams executed Plaintiff's formal 2024 LEADS Performance Evaluation, assigning Plaintiff an overall performance rating of "Fully Meets" expectations and explicitly documenting within the permanent corporate record that "Christal has done a good job conducting investigations".

**B. Protected Activity; First Charge of Discrimination**

13. On January 22, 2025, Plaintiff engaged in a legally protected activity by filing a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights under EEOC Charge No. 570-2024-04732.

14. This formal administrative charge placed corporate leadership at both Genesis Logistics, Inc. and DHL on direct legal notice that Plaintiff was opposing a continuous track of unlawful employment practices at the Stafford facility.

15. Specifically, Plaintiff's protected filing checked the boxes for Race, Age, Disability and Retaliation.

16. Plaintiff's protected filing detailed a severe, pervasive, and unmitigated pattern of discrimination, harassment, hostile work environment, and explicit professional deprivation from April 2024- January 2025 as fully incorporated herein from Exhibit A.

17. Plaintiff's protected filing detailed regarding the following:

a. Constant disparaging remarks by her Director Linda Hayes starting in mid-April 2024 regarding her race, age, natural hair and disability;

b. May 2024 promotion of a younger, Caucasian employee (Robert Badillo) who absorbed the majority of her job duties;

c. Despite providing a medical documentation of work limitations, Director Hayes forced her to stand on concrete for 3 hours in violation of her surgeon's restrictions resulting in a severe orthopedic re-injury on June 10, 2024;

d. a physical workplace battery on August 3, 2024, where Director Hayes intentionally pushed her in the chest;

e. a punitive schedule change on August 6, 2024, that banished her to grueling overnight hours shortly after she reported the ongoing harassment and requested reasonable medical accommodations;

f. and reported that she has knowledge of other employees being discriminated against based on protected factors.

33. On January 27, 2025, Plaintiff returned to work from FMLA leave after reinjuring her foot when Director Hayes violated her medical accommodation and assaulted her.

34. On January 29, 2025, corporate HR Director Ed Jenkins approached Plaintiff and confirmed that Defendants had officially received her active EEOC Charge of Discrimination. HR Director Jenkins admitted that corporate defense counsel had instructed him not to discuss the case with Plaintiff.

35. HR Director Jenkins offered Plaintiff an explicit bribe, promising that if she dropped her active EEOC charges, he would immediately increase her pay and promote her to HR Manager by March 1, 2025.

36. When Plaintiff asked why she should drop her claims, Jenkins threatened her, stating that leadership would "mistreat her and find a reason to dismiss her".

37. This retaliatory threat triggered a severe panic attack, causing Plaintiff to vomit and suffer a migraine that required emergency treatment and stabilization at Spotsylvania Regional Medical Center on January 31, 2025.

38. On February 5, 2025, Plaintiff sent a formal email to Vice President of Human Resources Tammy McNeil with a subject line “Bribery and Retaliation Concerns”, detailing HR Director Jenkins bribery and the explicit threats of mistreatment and termination.

39. In the same email Plaintiff also informed McNeil that she had successfully obtained a Preliminary Protective Order (Case No. GV25000736-00) against Director Linda Hayes from the Stafford County Court commanding Ms. Hayes to have zero contact or proximity with her.

40. In February 2025, Defendants allowed Director Linda Hayes to resign instead of enforcing the company policy against workplace violence and terminating her for assaulting Plaintiff.

**C. Retaliation for the First Charge of Discrimination**

41. On February 6, 2025, the very next business day after reporting the bribery and retaliation concerns, Defendants retaliated by summarily canceling Plaintiff's scheduled Memphis management training and corporate travel benefits.

40. On February 7, 2025, Plaintiff discovered that $500 was entirely missing from her paycheck, and an unauthorized destination checking account had been appended to her payroll profile. Defendants ignored her pleas and blocked her ServiceNow IT ticket via an "Access Restricted" HTTP 403 error page.

41. Since her January 2025 protected activity, Defendants have made plaintiff's work worse by systematically stripping Plaintiff of her Senior HR Representative duties, barring her from specialized training, and excluded her from standard operational communications.

42. Between February and March of 2025, Defendants removed Plaintiff from her assigned cubicle and relocated her to desk in the warehouse away from the rest of the Human Resource department, while younger, less-experienced employees sat in private offices receiving specialized training.

43. Specifically, a younger individual, Leslie Garcia (Age 26) was hired as temporary assistants and promoted to full HR Representatives within four months, complete with customized cubicle nameplates.

44. Defendants refused to provide Plaintiff with any title sign or workstation identifier, keeping her hidden in the warehouse.

**D. Protected Activity; Second and Third Amended Charge of Discrimination**

45. On February 12 and 20, 2025, Plaintiff engaged in legally protected activity by filing Amended Charge(s) of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights under EEOC Charge No. 570-2024-04732.

46. The formal amended administrative charge(s) placed corporate leadership at both Genesis Logistics, Inc. and DHL on direct legal notice that Plaintiff was opposing a continuous track of unlawful employment practices at the Stafford facility.

47. Specifically, Plaintiff's protected filings checked the boxes for Race, Age, Disability and Retaliation and detailed a continuing action from April 2024- February 2025 as fully incorporated herein from Exhibit B and C.

48. Plaintiff's protected filings detailed amendments adding the following to the original complaint for retaliation for the 1-22-2025 charge:

a. On January 29, 2025 (transcribed as 1/29/24), Director Ed Jenkins approached Plaintiff and confirmed that corporate counsel had received her formal EEOC Charge of Discrimination and offered her an explicit bribe, promising an immediate pay increase and a promotion to HR Manager by March 1st, if she agreed to drop her active EEOC charges. Director Jenkins issued an explicit retaliatory threat that corporate leadership would "mistreat her and find a reason to dismiss her." (Ex. B)

b. On February 5, 2025, Plaintiff submitted an escalated formal written complaint to VP Tammy McNeil detailing Director Jenkins's illegal

bribery attempt, the threats of retaliatory termination. On February 6, 2025, the very next business day after reporting the court order and bribery, Defendants executed immediate retaliation when Crystal Williams and Ed Jenkins called Plaintiff to deliver a punitive, post-hoc rationalization that her Memphis corporate training was canceled due to instructor PTO. (Ex. B)

c. I would like to add that I reported my re-injury to my foot to the Safety Manager and no claim was put in for Workmen's Comp. She told me that Linda would find out if I filed so she said I needed to think about it. Nothing ever was filed. I clearly told her the re-injury was the result of being forced to disregard my Dr.'s Orders for modified duties and work restrictions upon my return from surgery. (Ex. C).

**E. Protected Activity; April 7, 2025 Report of Age Discrimination and Fourth Amended Charge of Discrimination**

46. On April 7, 2025, Plaintiff reported age discrimination to Andrea Fields Sr. Director of HR and HR VP Tammy McNeil when Leslie Garcia (26) was promoted to HR specialist.

47. Plaintiff complained that "I applied for the HR Manager position on May 3rd 2024 and was told by [Director] Linda Hayes she will hire her own HR Managers. She [Ms. Hayes] then expressed that I had to be in my position for 6 months. I know this is not the case because there are several employees that have been promoted prior to being in their position for six months. I never received an interview or a disposition but noticed that my application was viewed on May 3rd by Linda and then released/denied on June 12th 2024 by Alexander J. Bruno.

48. Plaintiff complained that Leslie Garcia(26) was hired into HR on January 27th 2025 as an Admin in less than 4 months had been promoted to HR Representative.

49. Leslie have been given assigned desks and a sign to identify her title at her desk while Plaintiff had been there a year, and still had no sign and no desk.

50. On April 9, 2025, Plaintiff engaged in a legally protected activity by participating in a mediation with Defendant for her prior charges.

51. On April 9, 2025, Plaintiff engaged in a legally protected activity by filing a fourth Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights under EEOC Charge No. 570-2024-04732 as fully incorporated herein from Exhibit D.

52. The formal amended administrative charge placed corporate leadership at both Genesis Logistics, Inc. and DHL on direct legal notice that Plaintiff was opposing a continuous track of unlawful employment practices at the Stafford facility.

53. Plaintiff's protected filings detailed a continuing action from April 2024- April 2025.

54. Plaintiff's protected filings detailed the complaint of age discrimination involving Leslie Garcia.

**G. Reports of Retaliation**

55. On April 11, 2025, Plaintiff emailed Andrea Fields Sr. Director of HR and HR VP Tammy McNeil with a subject line "Report of Retaliation", summarily stating the following:

a. Immediately following a failed mediation attempt regarding Plaintiff's complaints of race and discrimination, Defendants launched a coordinated, highly retaliatory campaign of professional sabotage, silent treatment, and hostile positioning designed to manufacture performance failures and force her constructive discharge. Specifically, Human Resources Manager Crystal Williams initiated a total communication blackout, actively ignoring Plaintiff's phone calls, text messages, and internal notifications; Manager Williams deliberately withheld operational approval and funding for event purchases, forcing more than ten event days to pass in complete silence; Manager Williams created a fraudulent paper trail making it appear that Plaintiff was failing to complete her duties; Manager Williams actively censored Plaintiff's accurate notes regarding a management discussion to terminate another employee

b. On April 11, 2026, Plaintiff submitted a formal request for guidance regarding system transfers inside Kronos. Management met this inquiry with complete silence, continuing a pervasive retaliatory pattern of stripping Plaintiff of her Senior Human Resources responsibilities, freezing her professional development,

and punishing her for exercising her statutory right to oppose continuous age, race, and disability discrimination.

c. This intentional deprivation was engineered to set Plaintiff up for public failure on the operations floor and falsely frame her as neglecting her core project management responsibilities.

56. On April 27, 2025, Plaintiff emailed HR VP Tammy McNeil with a subject line "Retaliatory/Coercion Issues", summarily stating the following:

a. I have been denied training related to my daily roles and responsibilities, sabotaged for promotion, race, age and ADA discrimination, bribed, physically assaulted and retaliated against numerous times. Due to this mistreatment, I reported and filed a claim with the EEOC and I've had mediation with the EEOC and it seems the discrimination and retaliation has worsened since then.

b. My requests for daily training related to my role are ignored, my roles have been minimized to almost nothing or Admin duties as my younger colleagues learn the HR Rep responsibilities and maintain that level of access. My responsibilities and tasks are changing to ad hoc like hanging posters, reports or one off tasks for the HR Manager.

c. I am being falsely accused of terminating employees when I have not and they aware that I don't have the authority to do so. I am being told I could leave and receive a letter of recommendation.

d. I am being set up by the Director and the Hiring Manager. My colleagues are being interrogated to make false and bogus complaints against me. A co-worker and I exchanged a laugh and a lean in tap as I was leaving work 2 weeks ago and when I left they pulled him into a room and tried to coerce him to say I hit him. He refused and stated I did not hit him. He came to me and stated that it felt weird that they were pressuring him this way over something that did not happen.

e. Crystal Williams also asked another coworker why didn't she do anything and she stated she did not see that happen we were all laughing and tapping as we always do in a non-malice or harmful manner. This retaliatory behavior is demeaning to my character. As I am not a violent person.

f. Everyday there is something new that I have to defend myself with and these hostile work conditions are not conducive. They actually continue to give me anxiety, depression and mental duress, so extensive that I have been prescribed medication in order to come to work and try to function under these conditions.

**H. Constructive Discharge and Retaliation**

57. Plaintiff was placed on an approved medical leave of absence on May 12, 2025 and on May 11, 2025, one day prior to her leave commencing, Defendants' management and IT infrastructure preemptively issued a formal Account Deactivation and Termination Notice (Incident ID: INC64050956), completely revoking her network credentials and unilaterally liquidating and cashing out Plaintiff's private corporate stock shares without her consent, an action reserved exclusively for permanently terminated employees.

58. On June 2, 2025, Plaintiff emailed HR VP Tammy McNeil with a subject line "Termination in Retaliation", summarily stating the following:

a. Hello Andrea/Tammy,
Every person who was involved with my complaints have been terminated. I received an email from IT and the HR manager stating that my assignment was also terminated during my leave. When I called Christal Williams about my PTO, she told me I'm simply on leave and ignored the fact that she sent the emails to terminate my assignment. I am now locked out of my email account.
Further more, no one has addressed my concerns or inquiries about getting my leave back from when I had a restraining order, the age discrimination, the race discrimination, bribery and retaliation etc.
I'd also like to add that terminating someone while on leave is a policy violation. And further proof of retaliation.

59. On June 3, 2025, Manager Crystal Willaims falsely claimed that Plaintiff was "inactive" because of her leave status.

60. Plaintiff responded by email pointing out that she had "never been placed as inactive. I went on leave for almost 6 months and still had access to my emails, teams and training portals. I have been on leave for 2 weeks and you sent an email to IT not to state that I was inactive but to advise them my "assignment ended" on 5/11. I just left the building on 5/10. I have the email you sent. You followed up on 5/26 and 5/28 to have my email access and organization accounts shut down. That's not inactive status. I work in HR. That's termination status."

61. On June 3, 2025, Plaintiff emailed HR VP Tammy McNeil with a subject line "Formal Concern Regarding Misclassification and Account Termination During Leave", summarily stating the following:

a. I have been on an approved leave since [insert date], with no indication or communication from the organization that my employment status had changed from "active on leave" to anything else… Despite this, my access to organizational systems—including email, Teams, and training portals—was shut down shortly after my departure, following internal communication you initiated stating my "assignment ended" on 5/11… Referring to the end of an "assignment" and proceeding to disable access to work systems—especially while I am still on leave—constitutes a change of employment status, typically indicative of termination, not inactive status. As someone who works in HR, I am fully aware of the protocols and the implications of such language and actions."

62. On June 3, 2025, HR VP Tammy McNeil responded to Plaintiff email by stating that she was not terminated but "mov[ed] over" as inactive. This "move" is contrary to regular business practice.

63. On June 11, 2025, Plaintiff emailed HR VP Tammy McNeil with a subject line "Formal Notice of Constructive Discharge and Employment Dispute", summarily stating the following:

a. "I am writing to formally document and dispute the actions taken against me during my current approved leave of absence, which began on May 12, 2025 These actions include, but are not limited to, premature termination of my assignment, revocation of system access, unauthorized liquidation of my company shares, failure to return PTO hours, and continued lack of resolution regarding serious complaints of discrimination, retaliation, and HR policy violations."

64. The email goes on to detail that following a prior Short-Term Disability (STD) leave, Plaintiff was forced to use 80 hours of PTO due to the presence of Linda Hayes, who remained in the office despite a valid restraining order.

65. Her presence violated the court order and created a dangerous and hostile work environment.

66. Plaintiff never received a response to repeated requests to have these PTO hours reinstated, resulting in an ongoing negative PTO balance.

67. On July 1, 2025, Plaintiff submitted her formal FMLA medical leave application to MetLife and learned that Genesis payroll administrator Jennifer Seppeler transmitted explicitly altered work hour records to MetLife via HR Case HRS9717084, falsely recording Plaintiff's work history to artificially shrink her operational history below the FMLA's statutory 1,250-hour eligibility baseline.

68. This retaliation in the form of fraudulent work hour records resulted in an immediate denial of Plaintiff's medical leave and completion of her constructive discharge.

69. On July 1, 2025, Plaintiff formally emailed management to flag the fraudulent work hour records and document her final constructive discharge.

70. On July 7, 2025, HR VP Tammy McNeil affirmed that there had been an erroneous submission of hours worked and that it had been corrected, but it was still not an accurate reflection of actual hours worked.

71. On July 7, 2025, Plaintiff engaged in a legally protected activity by filing an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights under EEOC Charge No. 570-2024-04732 as fully incorporated herein from Exhibit E.

72. On September 12, 2025, Defendants sent a letter to Plaintiff stating she had been on unapproved leave since May 12, 2025 and had until September 17, 2025 to contact them before they considered it abandonment of employment.

73. Plaintiff settled a Workmen's Comp case with Defendants on December 23, 2025.

74. Plaintiff was terminated without cause in December 2025.

75. Plaintiff received her notice of right to sue on July 31, 2026 as fully incorporated as Exhibit F.

## IV. CAUSES OF ACTION

### COUNT I
### Race Discrimination — 42 U.S.C. § 1981

76. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

77. Defendants intentionally discriminated against Plaintiff on the basis of her race (Black/African American) by denying her the same right to make and enforce contracts, and to the full and equal benefit of all laws for the security of persons and property, as is enjoyed by white citizens.

78. Director Hayes would taunt Plaintiff about her natural Afro hair and physically try to "fix" Plaintiff's hair and expressed that it should be straight.

79. Defendants' discriminatory animus was manifested through severe and tangible adverse employment actions, including but not limited to: stripping her of core duties and assigning them to a newly hired white male comparator (Robert Badillo); denying her a promotional interview based on a waived "six-month rule"; forcing her to work in the warehouse while younger, white, and less experienced assistants were provided private cubicles and custom nameplates; and unilaterally reducing her annual corporate bonus.

80. Race was the "but-for" cause of the adverse employment actions, financial deprivations, and structural targeting executed against Plaintiff, which collectively altered the terms and privileges of her employment and culminated in an unlawful constructive discharge.

### COUNT II

### Race Discrimination — Title VII of the Civil Rights Act of 1964

81. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

82. Defendants have discriminated against Plaintiff in the terms, conditions, and privileges of her employment because of her race in direct violation of 42 U.S.C. § 2000e-2(a)(1).

83. Defendants have discriminated against Plaintiff in the terms, conditions, and privileges of her employment because of her race when in May 2024 promotion of a younger, Caucasian employee (Robert Badillo) was delegated the majority of her job duties.

84. Defendants subjected Plaintiff to a severe and pervasive hostile work environment based on her race, which altered the conditions of her employment and created an abusive working environment.

85. This hostile environment included: Regional HR Director Linda Hayes making derogatory remarks regarding her natural hair; physically pinning her hair back and tying it up against her will while calling her natural hair "nappy"; ordering staff members to socially isolate her; and physically assaulting her.

86. Defendants' corporate management failed to take prompt, effective remedial action after Plaintiff submitted formal grievances, choosing instead to protect the abuser, allow her to resign in violation of the workplace violence policy, manufacture false assault cross-investigations, and intensify the hostile conditions, directly resulting in Plaintiff's constructive discharge.

**COUNT III**

**Age Discrimination — Age Discrimination in Employment Act**

87. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

88. Defendants have discriminated against Plaintiff because of her age (52) in direct violation of 29 U.S.C. § 623(a)(1).

89. Defendants maintained an explicit age-based hostile work environment, including systematically advancing significantly younger, less qualified employees (such as Leslie Garcia, Age 26) into senior tracks within four months of hire, while stripping Plaintiff of her senior responsibilities, denying her training opportunities, and forcing her to work away from the HR department in a warehouse.

90. But for Plaintiff's age, she would not have been subjected to professional demotion, public humiliation, financial penalties, and systemic exclusion, which collectively engineered the intolerable conditions resulting in her constructive discharge.

**COUNT IV**

**Disability Discrimination and Failure to Accommodate — Americans with Disabilities Act**

91. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

92. Plaintiff was a qualified individual with a disability who possessed a known, documented orthopedic impairment resulting from severe foot and ankle surgery, which substantially limited her major life activities of walking and standing.

93. Defendants violated 42 U.S.C. § 12112(b)(5)(A) by refusing to accommodate Plaintiff's known medical restrictions when Director Hayes explicitly overrode her restrictions and commanded her, under threat of insubordination, to lead a mandatory HR Orientation requiring continuous standing for 3 hours on concrete.

94. As a direct consequence of this absolute denial of accommodation, the surgically inserted titanium plate in Plaintiff's foot fractured and broke apart inside her body, causing extreme physical pain and forcing her to undergo corrective surgery.

95. Defendants further discriminated against Plaintiff by penalizing her pay structure, forcing her to deplete her personal PTO into a negative balance, and refusing her requests to telework to separate her from her physical abuser, completing her constructive discharge.

**COUNT V**
**Retaliation — Title VII, ADEA, ADA, and FMLA**

96. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

97. Plaintiff engaged in legally protected activities by submitting internal written grievances regarding discrimination, harassment, and assault, and by maintaining active Charges of Discrimination with the EEOC.

98. In direct retaliation for her protected activity, Defendants took immediate, severe, and systemic adverse actions against Plaintiff, including; offering an explicit corporate bribe to drop her EEOC charges and threatening that leadership would "mistreat her and find a reason to dismiss her" if she refused; summarily canceling her scheduled corporate training and travel to Memphis the very next business day after she reported corporate bribery and served a judicial protective order; appending an unauthorized account to her payroll portal to divert $500; and executing a coerced, fraudulent assault investigation targeting her; removing her from her cubicle and subjecting her to work out of a warehouse away from the HR department.

99. There is a direct causal connection between Plaintiff's protected complaints and the financial, structural, and professional deprivations executed against her, which left her with no viable alternative but to notice a constructive discharge of her employment relationship.

**COUNT VI**

**Interference and Retaliation — Family and Medical Leave Act**

100. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

101. Defendants violated 29 U.S.C. § 2615(a)(1) by interfering with, restraining, and denying the exercise of Plaintiff's FMLA rights.

102. When Plaintiff submitted her formal FMLA medical leave application to MetLife, Defendants' payroll administrator transmitted explicitly altered, deflated, and falsified work history records to MetLife via HR Case HRS9717084 to intentionally force her below the FMLA's statutory 1,250-hour eligibility baseline.

103. This fraudulent interception resulted in an immediate, automatic denial of Plaintiff's protected medical leave, obstructing her statutory rights and directly completing her constructive discharge.

**COUNT VII**

**Constructive Discharge in Violation of Title VII, the ADA, and the ADEA**

104. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

105. Defendants deliberately, calculatedly, and maliciously engineered working conditions that were so hazardous, humiliating, hostile, and financially punitive that no reasonable employee could be expected to tolerate or remain in such employment.

106. The corporate deliberateness of Defendants' actions is evidenced by: weaponizing Plaintiff's internal disclosures by immediately leaking a confidential report of a physical battery to the abuser; intentionally overriding medical restrictions to the point of causing structural hardware failure within Plaintiff's body; explicitly refusing to enforce a formal Stafford County Court Preliminary Protective Order; manufacturing a coercive, fraudulent assault framing track against her; cutting off all communication lines and liquidating corporate assets via Incident ID:

INC64050956 prior to her leave; and committing administrative fraud under HR Case HRS9717084 to strip her of FMLA medical coverage.

107. Defendants' severe, unremitting, and continuous statutory violations left Plaintiff with absolutely no viable alternative but to terminate her employment relationship, achieving a complete and unlawful constructive discharge.

**COUNT VIII**

**Race Discrimination (Hairstyle / CROWN Act) — Virginia Human Rights Act, Va. Code § 2.2-3901**

108. Plaintiff re-alleges and incorporates each paragraph above as if fully set forth herein.

109. Under Va. Code § 2.2-3901(D), Virginia law explicitly prohibits discrimination on the basis of race, defining racial discrimination to include traits historically associated with race, including, but not limited to, hair texture, hair type, and protective hairstyles.

110. Defendants, through their corporate agents, intentionally discriminated against Plaintiff on the basis of her race by targeting, mocking, and altering her natural hair. On the operational warehouse floor, Director Hayes subjected Plaintiff to severe and pervasive race-based harassment and physical battery relating to her natural hair, including pinning her hair back and tying it up against her will, stating that her natural hair was "nappy," and commanding her that she needed to wear her hair straight to conform to unwritten corporate grooming standards.

111. Management failed to take prompt remedial action, choosing instead to protect Director Hayes, directly resulting in extreme emotional distress, professional degradation, lost compensation, and an ultimate constructive discharge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants Genesis Logistics, Inc. and DHL, jointly and severally, granting the following relief:

A. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the ADEA, the ADA, the FMLA, and the Virginia Human Rights Act;

B. An award of full back pay, front pay, interest, and the immediate financial restoration of her shorted annual bonus, diverted payroll funds, and liquidated corporate shares;

C. An award of compensatory damages for severe emotional distress, severe physical pain and suffering, medical costs, and mental anxiety under all applicable federal and state statutes;

D. An award of punitive damages pursuant to 42 U.S.C. § 1981, Title VII, and Va. Code § 2.2-3908 to punish Defendants' bad faith, malice, corporate bribery, and reckless indifference to civil rights;

E. An award of liquidated damages under the ADEA and FMLA;

F. An award of reasonable expert witness fees, and all litigation costs; and

G. Such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

**Dated:** 10-29-2026

**Respectfully submitted,**

**/s/ Christal Scott**

**Christal Scott,**

**Plaintiff Pro Se**
**918 Walnut Drive**
**Fredericksburg, Virginia 22405**
**Phone: 571-398-1278**

FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria DIVISION**

2025 OCT 29 P 4:46

Christal Scott
**Plaintiff(s),**

**v.**

**Civil Action Number:** 1:26cv3614-MSN-WEF

Genesis Logistics, et. al.
**Defendant(s),**

**LOCAL RULE 83.1 (N) CERTIFICATION**

**I declare under penalty of perjury that:**

**No attorney has prepared or assisted in the preparation of** Petition / Complaint & Demand for Jury Trial
**(Title of Document)**

Christal Scott
Name of *Pro Se* Party (Print or Type)

[signature]
Signature of *Pro Se* Party

Executed on: 10/29/2026 (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** __________.
**(Title of Document)**

(Name of Attorney)

(Address of Attorney)

(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

(Name of *Pro Se* Party (Print or Type)

Signature of *Pro Se* Party

Executed on: __________(Date)